UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

ROSE M. LIPKO, : CIVIL NO. **3:01-CV-1237**
:
Plaintiff : (Judge Conaboy)
:
v. : (Magistrate Judge Smyser)
:
JO ANNE B. BARNHART, :
COMMISSIONER OF SOCIAL SECURITY, :
:
Defendant :

**REPORT AND RECOMMENDATION**

The plaintiff has brought this civil action under the authority of 30 U.S.C. § 923(b) and 42 U.S.C. § 405(g) to obtain judicial review of the decision of the Commissioner of Social Security denying her claim for benefits under the Black Lung Benefits Act, 30 U.S.C. § 901 et seq.

The plaintiff's father, John Lipko, was a miner who died on April 6, 1953 due to pneumoconiosis. Tr. 34. The plaintiff's mother received Black Lung Benefits as the surviving widow of John Lipko. Tr. 35.

In 1985, the plaintiff applied for disability benefits and Black Lung Benefits. Tr. 302. The plaintiff's claim for disability benefits was denied as was her claim for Black Lung Benefits. Tr. 302-303. The plaintiff subsequently filed a second claim for disability benefits and that claim was granted based on a finding that the plaintiff was disabled as of October 1, 1990. Tr. 52 & 303. Based on the plaintiff's disability, the plaintiff's mother began receiving augmented Black Lung Benefits. Tr. 61-62.

The plaintiff's mother died on January 8, 1998. Tr. 66. On April 1, 1998, the plaintiff was notified that she is not entitled to Black Lung Benefits. Tr. 69-70. The plaintiff was told that her eligibility for benefits ended with the death of her mother and that she was not entitled to benefits because her disability started after age 22. *Id.*

The plaintiff appealed the determination that she was not entitled to Black Lung Benefits. Tr. 303. After her appeal was denied, the plaintiff filed a request for a hearing. A hearing was held before an administrative law judge (ALJ) on June 4, 1999. Tr. 245-253. On June 21, 1999, the ALJ issued a decision denying the plaintiff Black Lung Benefits. Tr. 302-

308. The Appeals Council denied the plaintiff's request for review, Tr. 314, and the plaintiff commenced the instant action.

By an Order dated January 9, 2002, the defendant's motion to remand was granted and the case was remanded to the Commissioner of Social Security for further consideration. Doc. 10.

After remand, the ALJ held a second hearing on December 12, 2002. Tr. 278-298.

The plaintiff testified at the hearing that she was born in 1938. Tr. 282. She testified that when she was young and went to school she could not talk properly or read due to a hearing problem. Tr. 283. She also testified that she can not spell and that the only arithmetic that she knows is addition. *Id.* She testified that she did not go to high school because she could not read, write or spell, because she would not have passed and because other kids made fun of her. Tr. 284. She testified that she did graduate eighth grade. Tr. 284-285.

The plaintiff testified that after the eighth grade she stayed at home doing nothing except helping her father who had miner's asthma. Tr. 285.

The plaintiff testified that she had a problem with her heart and that she was told in 1957 that she had rheumatic fever. *Id.* She testified that in 1957 she worked in a factory but that she got sick and that she had to leave work because of her rheumatic fever. Tr. 283. She testified that at that time she was dizzy and sick to her stomach a lot of the time, that she only worked a couple of months, and that she tried but was not able to work. Tr. 283-284. She testified that when she had rheumatic fever she was in the hospital for a couple of days, that she had to stay in bed, and that she was sick for a couple of months. Tr. 287 & 288. She also testified that she had been sick ever since she was small. Tr. 286. She testified that she did not work in 1958 because she was sick and getting dizzy spells. Tr. 287. She also testified that she did not work in 1959 when she was twenty-one years old or in 1960 when she was twenty-two years old. *Id.*

The plaintiff testified that she starting working at a hospital in 1965. Tr. 288. She testified that she got the job at the hospital through a relative. *Id.*

The plaintiff also testified that she has back problems and that her back problems probably began before 1960. Tr. 284. She testified that [at some point] she fell over and could not walk and that even now she falls over and doesn't know why. *Id.*

The plaintiff further testified that she had shortness of breath and chest pains and that in 1964, 1967 or 1969 she was in the hospital probably two times. Tr. 289.

The plaintiff testified that she can read lips if a person has a loud tone but that if a person has a low tone she can not read the person's lips. Tr. 290. She testified that she does not remember how or when she began to read lips but that she probably started reading lips before she worked in the hospital. *Id.*

Patricia Collins also testified at the hearing. Tr. 291. She testified that the plaintiff is her older sister. *Id.*

Patricia Collins testified that the plaintiff has a hearing problem. Tr. 291. She testified that the plaintiff did not go to high school and that during those high-school-age years the plaintiff would take care of their sick mother and father. Tr. 292. She testified that the plaintiff would try to help by trying to do small things around the house but that she just could not do it. Tr. 292 & 294. She testified that the plaintiff never really had friends because everybody made fun of her because she was hard of hearing and could not speak properly. Tr. 292. She testified that the plaintiff had rheumatic fever in 1957 and that the plaintiff could not go to dances or participate in sports because of her rheumatic fever. Tr. 292-293. She testified that their mother was always taking the plaintiff to the doctor because the plaintiff was always laying down and was always sick. She stated that the plaintiff was always tired, that she would complain about being dizzy and that she would complain that she could not hear. Tr. 291 & 294.

Patricia Collins testified that the plaintiff tried to work in a factory but that she missed many days and that she

could not go back to the factory because she would get dizzy at work. Tr. 293. She testified that the plaintiff tried to get other jobs but that nobody would hire her because of her medical conditions. *Id.* She testified that there was a family connection with the hospital and that the plaintiff was able to work at the hospital for many years. Tr. 294.

The plaintiff's attorney requested to be allowed thirty days after the hearing in which to submit relevant records, and the ALJ granted that request. Tr. 295. After the hearing, the plaintiff submitted attendance and scholarship records for the years 1943 to 1952. Tr. 446-454. The plaintiff also submitted two pages of records from the Schuylkill County Society for Crippled Children. Tr. 455-456. Those records contain a notation indicating that the plaintiff is hard of hearing, that she should have a hearing test, and that she was referred to a speech therapist. Tr. 455-456. Those records also indicate that the plaintiff has long, narrow, boney, pronated, flat feet and that she was advised to wear orthopedic oxfords and arch pads. *Id.*

The plaintiff also submitted a letter dated April 18, 2001 from Ruth Purnell. Tr. 457. Mrs. Purnell states that she

was a teacher at the Grier City Elementary School during the time that the plaintiff attended that school. *Id.* She states that the plaintiff had a serious hearing impairment as a student in her classroom. *Id.* The plaintiff also submitted a letter dated February 5, 1998, from Ruth Purnell, retired teacher, and Elbur Purnell, retired superintendent of schools. Tr. 458. The Purnells state that, based on their positions as the plaintiff's teacher and an administrator in the school attended by the plaintiff, they feel that they are capable of supporting the fact that the plaintiff was dismissed from school in the sixth grade due to her medical disabilities which affected her heart, her hearing and her speech. *Id.*

On January 31, 2003, the ALJ issued his decision denying the plaintiff Black Lung Benefits. Tr. 270-274. The ALJ found as a fact that the plaintiff engaged in substantial gainful work activity in 1962, 1963, and from 1968 through October 1, 1990. Tr. 273. The ALJ also found as a fact that there is no medical evidence of a severe physical or mental impairment prior to the date the claimant attained the age of 22. *Id.* The ALJ concluded that the plaintiff was not under a disability as defined in the Social Security Act on or before the date she attained age 22. *Id.* On April 7, 2004, the Office

of Hearings and Appeals refused to assume jurisdiction thus making the ALJ's decision the final decision of the Commissioner. Tr. 257-258.

By an Order dated November 22, 2004, Judge Conaboy granted the defendant's motion to reopen the case, and by an Order dated December 1, 2004 he referred the case to the undersigned for purposes or reviewing the matter and filing a Report and Recommendation at the appropriate time.

On January 14, 2005, the plaintiff filed a motion for summary judgment and a brief in support of that motion. On February 14, 2005, the defendant file a brief in opposition to the plaintiff's motion.

The Black Lung Benefits Act of 1972, 30 U.S.C. § 901 et seq., provides benefits for miners disabled by pneumoconiosis and for surviving spouses and children of miners who die from pneumoconiosis. 30 U.S.C. § 922(a)(2) provides for payment of benefits to the widow of a miner whose death is due to pneumoconiosis and § 922(a)(4) provides for an augmentation of the amount of benefits due to the widow if the widow has dependents. A dependent is defined to include an unmarried

child under the age of 18 or an unmarried child under a disability as defined in the Social Security Act. 30 U.S.C. § 902(a). 30 U.S.C. § 922(a)(3) provides for payment of benefits to a child of a miner whose death is due to pneumoconiosis for so long as the child meets the criteria for the term "child" contained in 30 U.S.C. § 902(g). 30 U.S.C. § 922(a)(3) further provides that a child is not entitled to benefits for any month for which the widow of the miner is entitled to benefits. 30 U.S.C. § 902(g) provides:

> (g) The term "child" means a child or a step-child who is -
> (1) unmarried; and
> (2)(A) under eighteen years of age, or
> (B)(i) under a disability as defined in section 223(d) of the Social Security Act [42 USCS § 423(d)],
> (ii) which began before the age specified in section 202(d)(1)(B)(ii) of the Social Security Act [age 22], or, in the case of a student, before he ceased to be a student; or
> (C) a student.

In *Kidda v. Director, Office of Workers Compensation Programs*, 769 F.2d 165, 166-68 (3d Cir. 1985), *cert. denied*, 475 U.S. 1096 (1986), the United States Court of Appeals for the Third Circuit addressed the meaning of the language in 30 U.S.C. § 902(g)(2)(B) that a child be "under a disability . . . which began before the age" of 22. The court construed that

language to refer to only one disability which began before age 22 and continued uninterrupted thereafter. *Id.* at 167-68.

30 U.S.C. § 923(b) provides that certain provisions of the Social Security Act, including the judicial review provision in 42 U.S.C. § 405(g), are applicable to claims under the Black Lung Benefits Act as if benefits under that Act were benefits under Title II of the Social Security Act. Thus, if the Commissioner's decision is supported by substantial evidence it must be affirmed. 42 U.S.C. § 405(g).

Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999)(quoting *Ventura v. Shalala*, 55 F.3d 900, 901 (3d Cir. 1995)). Substantial evidence is more than a mere scintilla of evidence but less than a preponderance. *Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir. 1988).

A single piece of evidence is not substantial evidence if the Commissioner ignores countervailing evidence or fails to resolve a conflict created by the evidence. *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993). However, in an adequately

developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the decision] from being supported by substantial evidence." *Consolo v. Federal Maritime Comm'n*, 383 U.S. 607, 620 (1966). In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole. *Smith v. Califano*, 637 F.2d 968, 970 (3d Cir. 1981).

For a person over the age of 18 to meet the definition of child in 30 U.S.C. § 902(g) that person must *inter alia* be under a disability as defined in 42 U.S.C. § 423(d). 42 U.S.C. § 423(d)(1)(A) defines disability to mean "inability to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ."

The Commissioner has promulgated regulations creating a five-step process to determine if a claimant is disabled. The Commissioner must sequentially determine: (1) whether the

claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant's impairment prevents the claimant from doing past relevant work; and, (5) whether the claimant's impairment prevents the claimant from doing any other work. *See* 20 C.F.R. § 404.1520 and 20 C.F.R. § 416.920.

The ALJ made a finding of fact that the plaintiff engaged in substantial gainful work activity in 1962, 1963, and from 1968 through October 1, 1990. Tr. 273. If the plaintiff was engaged in substantial gainful activity, she was not under a disability as defined in the Social Security Act for those years. In order to meet the definition of a child entitled to benefits under 30 U.S.C. § 902(g)(2)(B), the plaintiff must have been under a disability which began before she reached the age of 22 and which continued uninterrupted thereafter. *Kidda, supra,* 769 F.2d at 167-168. Thus, if the ALJ's finding that the plaintiff engaged in substantial gainful work activity in 1962, 1963, and from 1968 through 1990 is supported by substantial evidence, the plaintiff is not entitled to the Black Lung Benefits she is seeking in this action.

The plaintiff argues that her job at the hospital was merely a token job. She asserts her job as a nurse's aide at the hospital was given to her as a favor from a relative. She also asserts that after more than twenty years of working as a nurse's aide she was unable to pass a test to obtain a nurse's aide certificate.

The ALJ based his finding that the plaintiff was engaged in substantial gainful work activity in 1962, 1963, and from 1968 through 1990 on the plaintiff's earnings records for those years. Tr. 272. The plaintiff's earnings records show that in 1962 she earned $2404.62, that in 1963 she earned $2515.09, that in 1968 she earned $2580.00, and that, with a few minor fluctuations, her earnings steadily increased in the years from 1968 to 1990 such that in 1990 she earned $14,434.25. Tr. 443. The ALJ stated that "[t]his 25-year period of substantial gainful activity refutes a finding that the claimant was under a continuous disability which began prior to age 22 and continued until October 1, 1990, the date she was found disabled based on her own work record." Tr. 272.

The Commissioner's regulations provide that the amount of earnings from work a person has done (regardless of whether

it is unsheltered or sheltered work) may show that the person has engaged in substantial gainful activity. 28 C.F.R. § 404.1574(a)(1). The regulations further provide that earnings from work activity as an employee show that a person has engaged in substantial gainful activity if the average monthly earnings for any one-year period exceed monthly amounts specified in the regulations for different calendar years. 28 C.F.R. § 404.1574(b)(2). The plaintiff's earnings record shows that, in the years 1962, 1963, and from 1968 through 1990, her average monthly earnings exceeds those amounts set forth in the regulation.

Although the plaintiff obtained her job through a relative, and although after working for many years as a nurse's aide she was not able to pass a test to obtain a nurse's aide certificate, the record indicates that the plaintiff worked for many years and that her earnings exceeded the amount that, the Commissioner has determined, shows substantial gainful activity. The ALJ's finding that the plaintiff engaged in substantial gainful work activity in 1962, 1963, and from 1968 through October 1, 1990 is supported by substantial evidence. Accordingly, the plaintiff is not

entitled to the Black Lung Benefits she is seeking in this action.

In addition to finding that the plaintiff engaged in substantial gainful work activity in 1962, 1963, and from 1968 through October 1, 1990, the ALJ also made a finding of fact that the plaintiff did not have a severe physical or mental impairment prior to the date she attained the age of 22. Tr. 273. The ALJ therefore concluded that the plaintiff was not under a disability on or before the date she attained age 22. *Id.*

The plaintiff and the defendant both address whether the plaintiff was disabled prior to 22 years of age.[1] However, even assuming *arguendo* that the ALJ's finding that the plaintiff did not have a severe physical or mental impairment prior to the date she attained the age of 22 is not supported

[1] In fact, the defendant states in her brief that the ALJ did not deny benefits based on the plaintiff's performance of substantial gainful activity and that the ALJ's determination that the plaintiff's work as a nurse's aide was substantial gainful activity is irrelevant to the issues before this court. We think that the defendant misreads the ALJ's decision and misunderstands the issue before this court. The question whether the plaintiff's work as a nurse's aide was substantial gainful activity is not irrelevant to the issue before this court which is whether or not the plaintiff meets the definition of a child under 30 U.S.C. § 902(g).

by substantial evidence, the plaintiff did not remain continuously disabled from the age of 22 so as to be precluded from engaging in substantial gainful employment in the years 1962, 1963 and 1968 through 1990. Since the plaintiff was not continuously disabled from prior to the age of 22, the plaintiff has failed to satisfy the statutory requirements for Black Lung Benefits and there is no need for the court to address the question whether the plaintiff was disabled prior to the age of 22.

Based on the foregoing, it is recommended that the plaintiff's motion (doc. 17) for summary judgment be denied, that the decision of the Commissioner be affirmed and that the case file be closed.

/s/ J. Andrew Smyser
J. Andrew Smyser
Magistrate Judge

Dated: April 29, 2005.